IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CONTRELL PLUMMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 12-cv-0909-MJR-SCW |
| FRANK LAWRENCE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

This § 1983 civil rights action stems from Plaintiff's allegations of multiple constitutional violations that occurred at Menard Correctional Center. (Doc. 2). Because Plaintiff's Complaint included several unrelated claims, the Court severed the original case into other cases. (Doc. 1). This case addresses Plaintiff's claims against his correctional counselor, Frank Lawrence, for denial of right to access the courts, retaliation, and conspiracy by failing to return over 15 grievances, refusing to assign Plaintiff a prison job, and denying Plaintiff access to his personal mail. (Doc. 1).

The case is before the Court on Defendant's Motion for Summary Judgment (Doc. 48). After seeking an extension of time, Plaintiff filed his response; the motion is ripe for disposition. For the reasons explained below, the Court GRANTS Defendant's motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment—which is governed by Federal Rule of Procedure 56—is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56). The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and supported by evidence . . . the nonmoving party may not rest on mere allegations or denials in its pleadings"). A mere scintilla of evidence supporting the non-movant's position is insufficient to overcome summary judgment; a non-movant will prevail only when it presents definite, competent evidence to rebut the motion. *Estate of Escobedo v. Martin*, 702 F.3d 388, 403 (7th Cir. 2012); *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012). Summary judgment is only appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *Carlisle v. Deere & Co.*, 576 F.3d 649, 653 (7th Cir. 2009).

The Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court considers the facts in a light most favorable to the non-movant—here, Plaintiff. *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).

## FACTUAL BACKGROUND

Defendant served as Plaintiff's counselor when Plaintiff lived in Menard's "South Upper" unit. (Pl's Dep., p. 5). (Plaintiff lived on South Upper from June 22, 2010 until December 2, 2010). (Doc. 49-1, p. 32). Defendant's duties include responding to inmate grievances and submitting and voting on inmate job requests. (Doc. 49-1, p. 29). However, Defendant neither worked in the mail room nor had any responsibilities with regard to prisoner mail. (Doc. 49-1, p. 29). Defendant denies that he conspired to interfere with Plaintiff's mail or interfered directly with Plaintiff's mail. (Doc. 49-1, p. 29).

Plaintiff experienced a variety of health problems in 2010, including stomach pains, back pain, throat irritation, and asthma. (Some of those health problems are at issue in Plaintiff's other lawsuits). (Pl.'s Dep., p. 6). Plaintiff did not believe that Menard's health care unit addressed his problems adequately, and wrote Defendant numerous grievances on the subject. (Doc. 49-1, p. 6). On two different occasions, Defendant came to Plaintiff's cell and acknowledged that he had received grievances from Plaintiff. (Pl.'s Dep., p.7).

Plaintiff filed a complaint against Defendant with Menard's Internal Affairs office. (Pl.'s Dep. p. 8). Some time later, Defendant came by Plaintiff's cell and told Plaintiff that he had been instructed to copy Plaintiff's grievances and sent them to Gayle Walls, the Director of Nursing. (Pl.'s Dep. p. 7). The policy at Menard is for a correctional counselor to send copies of grievances regarding medical issues to the director of nursing for a response. (Doc. 49-1, p. 30). Walls would make findings when the grievance addressed health issues. (Pl.'s Dep. p. 8).

Plaintiff assumed from the conversation regarding the procedure for medical grievances that Internal Affairs had spoken to Defendant about his complaints, but Defendant did not state that directly. (Pl.'s Dep. pp. 19-20). Defendant, in fact, denies speaking to Internal Affairs about Plaintiff. (Doc. 49-1, p. 31).

Defendant implied that Walls had fifteen to sixteen of Plaintiff's grievances. (Pl.'s Dep. pp. 7-8). Defendant claims he sent copies of all of Plaintiff's grievances to Walls and relied on her to respond to them. (Doc. 49-1, p. 31). Walls' response would have come to Defendant, who would have forwarded to Plaintiff. (Doc. 49-1, p. 31). Plaintiff never received responses on any of the grievances that were allegedly given to Walls for responses. (Pl.'s Dep. p. 9).

One day, Defendant came to Plaintiff's cell to ask what was wrong with him (i.e., why Plaintiff was filing so many grievances). (Pl.'s Dep. pp. 11-12). Plaintiff explained that he had health issues. (Pl.'s Dep. p. 12). Defendant told him to "stop filing motherfucking grievances or else." (Pl.'s Dep. p. 12). Plaintiff filed a grievance regarding this incident. (Pl.'s Dep. p.12).

4

Defendant denies making this threat or telling Plaintiff to stop filing grievances. (Doc. 49-1. p. 31). Plaintiff submitted a copy of an emergency grievance he allegedly filed as a result of this incident, as well as a kite that he wrote to the Warden, asking if the emergency grievance had been received. (Doc. 65-3, pp. 12-15). After Defendant made the threat, Plaintiff began experiencing problems with his mail. (Pl.'s Dep. p. 12). Mail from his mother would be sent back to her return to sender. (Pl.'s Dep. p.12).

Plaintiff attached grievances and other correspondence to his Response. However, many of these letters are dated 2011, 2012, or 2013, and as Defendant was only Plaintiff's counselor during the second half of 2010, these documents are not relevant to Plaintiff's claims here. (*See* Doc. 65-2, pp. 1-34). Plaintiff also attached numerous grievances to his Complaint from the relevant time period. (Doc. 2-1). None of the grievances have any marks indicating that they were received. (Doc. 2-1). Plaintiff alleges that these grievances are copies of grievances he submitted to Defendant and never received responses on. (Doc. 2-1). He also alleges that Defendant could not produce copies of any of these grievances in discovery. (Doc. 65-1, pp. 4, 18).

Around late 2010, there was a class-action lawsuit regarding arrests around the Chicago area. (Pl.'s Dep. p. 12). Plaintiff believed that he was entitled to be part of the class. (Pl.'s Dep. p 13). The claims administrator sent him paperwork to join the class. (Pl.'s Dep. p. 13). Plaintiff had a deadline in October or November of 2010 to file his claim. (Pl.'s Dep. p. 13). Plaintiff did not receive the settlement

5

paperwork until February of 2011. (Pl.'s Dep. p. 13). Plaintiff alleges that both his mother and the claims agent told him that they had tried to send the paperwork directly to Menard, and it kept being returned to sender. (Pl.'s Dep. pp. 14, 16). Plaintiff believes that the class lawyers then tried his last known address, which was his aunt's house. (Pl.'s Dep. p. 14). Plaintiff's aunt sent the paperwork to his mother, who then tried to send it to him. (Pl.'s Dep. p. 15). Plaintiff explained his problems with Defendant to his mother. (Pl.'s Dep. p. 15). Plaintiff's mother then wrote Defendant's name on the envelope, and Menard let that mail come into the prison. (Pl.'s Dep. p. 16). Plaintiff has provided an envelope—with Defendant's name on the address line—that states it is for Contrell Plummer. (Doc. 65-3, p. 1). Other letters from Plaintiff's mother were also returned to her during the same time period. (Pl.'s Dep. p. 17). Plaintiff also received envelopes with two postmarks. (Pl.'s Dep. p. 17). Plaintiff submitted correspondence from the class action settlement indicating that he missed the deadline to file a claim. (Doc. 65-3, p. 4).

Plaintiff was also dissatisfied with the results from several job applications. He applied for several jobs, including in the commissary and officer's kitchen. (Pl.'s Dep. p. 21). As Plaintiff's counselor, Defendant would have to fill out an inmate vote sheet for him and then indicate on that form by voting 'yes' or 'no' whether he believed Plaintiff should be approved for a job. (Doc. 49-1, p. 29). After Defendant voted, he would send along the vote sheet to other Menard officials, such as the Casework Supervisor, the Clinical Services Supervisor, the Intelligence Office, and the Warden. (Doc. 49-1, p. 30). If Plaintiff was approved, his application would

have been forwarded and kept in the placement office. (Doc. 49-1, p. 30). The supervisors of inmate job assignments then choose inmates from the applications in the placement office. (Doc. 49-1, p. 30). Plaintiff testified that inmates had certain requirements to be put up for a job, in that they had to have A grade status, have a low aggression level, and had to be healthy. (Pl.'s Dep. p. 21).

Plaintiff had held other jobs prior to the time Lawrence was his counselor in 2006-2007 and again in 2009. (Pl.'s Dep. p. 22). Plaintiff has no evidence that Defendant interfered with his job placement. (Pl.'s Dep. pp. 22-23). Defendant denies that he ever refused to submit Plaintiff for a job assignment or conspired to do so, although he concedes that he may have voted "no," as he is entitled to do. (Doc. 49-1, p. 30). Plaintiff did not remember specifically when he put in for jobs. (Pl.'s Dep. p. 21). Neither party submitted any documentation regarding Plaintiff's job requests.

In addition to complaining to Internal Affairs about Defendant, Plaintiff also wrote formal grievances about him and wrote a letter to the ARB regarding his missing grievances. (Pl.'s Dep. pp. 17-18). Plaintiff has no evidence that Defendant knew about any of Plaintiff's complaints about him. (Pl.'s Dep. p. 20).

## ANALYSIS

Plaintiff brings allegations against Defendant Lawrence via three theories of relief: (1) denial of access to the courts; (2) retaliation; and (3) conspiracy. Unfortunately for Plaintiff, the evidence in this case, even when construed generously for him, cannot support a jury verdict in Plaintiff's favor.

7

1. *Denial of Access to the Courts*

In Plaintiff's Complaint, he alleges that Lawrence withheld or lost about 15 grievances in violation of the First and Eighth Amendments. The Court cannot find any support for the proposition that failure to respond to grievances violates the Eighth Amendment by creating an unconstitutional condition of confinement. Likewise, the Seventh Circuit has rejected due process claims based on the Fourteenth and First Amendments. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Plaintiff only states a constitutional claim to the extent that the failure of the grievance system denied him access to the courts. *See Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) (citing *Antonelli*, 81 F.3d at 1430).

Here, it is clear that there has been no denial of access to the courts. Plaintiff's grievances address the health care system at Menard. Since filing those grievances, Plaintiff has brought lawsuits based on the underlying conduct. *See Plummer v. I.D.O.C.*, 11-cv-682-MJR; *Plummer v. Lang*, 12-cv-907-MJR-SCW; *Plummer v. Unknown Gallery 8 Officer*, 12-cv-908. His Response admits as much. (Doc. 65-1, p.8). Plaintiff has not been denied access to the Courts due to Defendant's failure to process his grievances, and no reasonable jury could find so. *See Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (a plaintiff must explain how he is unable to pursue a legitimate challenge to prison conditions);

Plaintiff's allegations regarding the Dunn Settlement have more teeth. Plaintiff submitted clear evidence that he was not permitted to file a claim with the settlement because he did not receive the paperwork in a timely fashion. However,

other than Plaintiff's speculation, there is no evidence that Defendant Lawrence ever had access Plaintiff's mail. Defendant filed an affidavit stating that as a correctional counselor, he does not work in the mail room, nor is he involved in distributing mail. In fact, Plaintiff testified that his mother was able to get him mail on one occasion when she sent it care of Defendant. The one letter that can possibly be connected with Defendant is the one letter Plaintiff says he received. A reasonable jury could not infer from this evidence that Lawrence was interfering with Plaintiff's mail.

Plaintiff has submitted no evidence to rebut this allegation, other than his own speculation that Defendant could have conspired with mail room employees to accomplish this goal. But Plaintiff does not name or describe any employees with whom Defendant conspired, much less submitted any evidence of agreement or an objective of the conspiracy. On this record, no reasonable jury could conclude that Defendant interfered with Plaintiff's access to the courts on this record.

### 2. *Retaliation*

Plaintiff also alleges that Defendant retaliated against him for filing grievances and reporting him to IA.

An inmate has a constitutional right to file a grievance as part of his right of access to the courts under the First Amendment. **DeWalt v. Carter, 224 F.3d 607, 618 (7th Cir. 2000)**. Retaliatory official action violates the Constitution, even if the officer would be otherwise authorized to take that action in the absence of a retaliatory motive. **Zimmerman v. Tribble, 226 F.3d 568, 573 (7th Cir. 2000)**. In a

9

First Amendment case, the burden of proof is split between the parties. *Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013) citing *Mt. Healthy Board of Education v. Doyle*, 429 U.S. 274 (1977). First, Plaintiff must show that defendant's conduct was sufficient to cause the injury, that is, that the protected First Amendment conduct was a motivating factor for taking the retaliatory action. *Id.* at 635. The burden then shifts to defendant to rebut by showing that the action would have occurred anyway, regardless of the improper motive. *Id.* The inquiry is a question of fact. *Ustrak v. Fairman*, 781 F.2d 573, 578 (7th Cir. 1986). Evidence that shows that a prisoner did not violate the regulation can show retaliation. *Hale v. Scott*, 371 F.3d 917, 920 (7th Cir. 2004).

Here, Lawrence is entitled to summary judgment. The Court takes as true Plaintiff's statement that Defendant told him to "stop filing motherfucking grievances." But there is no evidence that Defendant engaged in the conduct Plaintiff ascribes to him, other than Plaintiff's speculation. Plaintiff alleges that Lawrence retaliated against him for filing grievances by interfering with his mail and by refusing to put him in for a job. But as discussed above, Lawrence submitted evidence that he never worked in the mail room and had no hand in delivering mail to inmates. Plaintiff has not rebutted this evidence with anything more than speculation and conspiracy allegations.

As for putting him in for a job, Defendant submitted evidence that, although he starts the process, other employees also get a vote on whether Plaintiff should be put up for a job. He also submitted evidence that some inmates may not get picked

for jobs by the supervisor of a particular area, despite having been approved. Plaintiff testified that he believed Defendant kept him from getting a job because he had held other jobs at Menard before Defendant was his counselor. But Plaintiff did not submit any evidence of when Defendant mentioned his grievances in relation to when Plaintiff put in for various jobs. Plaintiff has not submitted any evidence (even temporal proximity between the events) that some retaliatory animus motivated Defendant to deny his request for a job. There is no evidence that Defendant did not put Plaintiff in for a job, other than Plaintiff's speculation.

Further, Defendant has submitted evidence that other prison staff could have impacted whether Plaintiff was selected for a job, suggesting that Plaintiff could have been denied a job for an entirely proper reason. There is no evidence on whether Lawrence voted 'yes' or 'no' on Plaintiff's job request. There is no evidence on whether any other person voted 'yes' or 'no' on Plaintiff's job request. Plaintiff testified that he believed that if Defendant voted "no," the others would have as well. But again, that is merely Plaintiff's speculation. There is not enough evidence about what happened after Plaintiff submitted his job requests for a reasonable jury to conclude that Defendant retaliated against Plaintiff.

3. *Conspiracy*

To prove a § 1983 conspiracy claim, the plaintiff must prove that 1) a state official and a private individual[1] reached an understanding to deprive the plaintiff

---

[1] The Defendant in this case is a state actor. It is likely that this claim is superfluous and unnecessary. *See Turley v. Rednour*, 729 F.3d 645, 649 n. 2 (citing *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009) (finding that the function of a § 1985 conspiracy claim is to "permit recovery from

11

of his constitutional rights, and 2) those individuals were willful participants in the unlawful activity with the state actor. *Cooney v. Casady*, 735 F.3d 514, 518 (7th Cir. 2013) (citing *Lewis v. Mills*, 677 F.3d 324, 333 (7th Cir. 2012)). Typically, the evidence must reflect a "concerted effort" between the parties. *Whitlock v. Brueggemann*, 682 F.3d 567, 577 (7th Cir. 2012). It is not enough for the conspirators to share the same objective; rather a conspiracy requires that there be an agreement, express or implied, to reach a desired result. *Cooney*, 735 F.3d at 519 (quoting *Hampton v. Hanrahan,* 600 F.2d 600, 621 (7th Cir. 1979)).

Here, Plaintiff has named only one defendant. This makes his claim particularly superfluous, as the object of pleading conspiracy is usually to establish liability as to all conspirators. Nor has Plaintiff submitted any evidence tending to show conspiracy. He has not identified the conspirators in any way, either by name or position. He has not described conspiratorial acts. Plaintiff's only evidence is his own theory that Defendant retaliated against him and that staff at Menard frequently stick together. Were that type of speculation sufficient to stave off summary judgment, summary judgment would be a largely useless exercise. Plaintiff has submitted no evidence showing a "concerted effort" or even a bare agreement. In the absence of such evidence, no reasonable jury could find that Defendant engaged in a conspiracy.

---

a private actor who has conspired with state actors" and without private actors, the conspiracy claim adds only "needless complexity")). However, Defendant has not raised this issue.

CONCLUSION

For the foregoing reasons, Defendant Lawrence's Motion for Summary Judgment (Doc. 48) is **GRANTED**. Since this order disposes of all claims, the Clerk of the Court is DIRECTED to close the case and to ENTER JUDGMENT against Plaintiff and in favor of Defendant Lawrence. All settings are cancelled; all motions are moot.

**IT IS SO ORDERED.**

**DATED: DECEMBER 30, 2014**

/S/ *MICHAEL J. REAGAN*
**MICHAEL J. REAGAN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**